UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| VY LA LE,<br><br>              Petitioner,<br><br>     v.<br><br>HAROLD CLARK,<br><br>              Respondent. | Case No.  C05-5238RJB<br><br>REPORT AND RECOMMENDATION<br><br>Noted for **February 3, 2006** |

This matter has been referred to United States Magistrate Judge J. Kelley Arnold pursuant to 28 U.S.C. § 636(b)(1)(A) and 636 (b)(1)(B), and Local Magistrates Rule MJR3 and MJR4.  Petitioner is seeking federal habeas relief, pursuant to 28 U.S.C. § 2254, from state jury convictions for first-degree assault with a deadly weapon enhancement, second-degree malicious mischief and bail jumping.  On November 15, 2002, petitioner was sentenced on all three crimes to the total of 184 months of incarceration..

## **FACTUAL AND PROCEDURAL BACKGROUND**

The Washington State Court of Appeals summarized the case as follows:

This case stems from an assault on Leslie Calvert. There are differing accounts of the assault, but the parties generally agree that on the day of the assault Calvert parked his car across from the 38th Street Tavern in Tacoma, encountered three or four Asian males, a

scuffle ensued, and Calvert punched one of the men. One young man punched Calvert in the back of the head, nearly knocking him over, and the men proceeded to severely beat him. After Calvert was able to get away, the assailants smashed the windows of his Cadillac with various objects. Calvert suffered a broken cheekbone and was taken to the hospital.

In an amended information, the State charged Le with first degree assault with a deadly weapon, second degree malicious mischief, and bail jumping. The case went to trial almost three years later.

During voir dire, the court asked the jurors if they had had any experience with a "violent act." Juror 29 responded that his wife and two daughters had been "killed" 17 years before in North Carolina. Defense counsel later asked if any jurors who had experience with violent acts could not act impartially or would let their sympathy override their decision; juror 29 did not answer yes to either one of these questions. Defense counsel did not challenge juror 29 for cause or use a peremptory challenge.

Defense counsel also filed a motion in limine concerning the State's opening statement; the trial court granted the motion on six of the seven points raised, reserving ruling on the scope of Calvert's testimony about his medical conditions. The motion did not seek to exclude any hearsay testimony. During opening statements, the prosecutor described the scene and stated: "Another gentleman, who will not testify, is not around, was also there." II Report of Proceedings (RP) at 51. Defense counsel did not object to this statement.

At trial, a number of witnesses testified to the events surrounding the assault. First, Jib Cheshier, Calvert's roommate and tenant, testified. Cheshier witnessed the assault from the 38th Street Tavern. Cheshier saw Calvert park his car across the street. Cheshier saw Calvert exchange words with three individuals and appeared to flip them off. One of the men, who Cheshier identified as Le, punched Calvert in the back of the head, nearly knocking him down, and Calvert turned around and hit Le. According to Cheshier, the three continued to beat Calvert with various objects. Cheshier testified that he and another bar patron, Dean Carlos, went across the street to help Calvert. Cheshier and Carlos fended off the attackers and brought Calvert back to the tavern.

Cheshier said that Le, armed with a two-by-four, followed Calvert across the street to the tavern. Carlos would not let Le in, and Cheshier saw Le and the two other assailants go back across the street and smash the windows of Calvert's Cadillac. Cheshier testified that the three used two-by-fours, rocks and a pipe to smash Calvert's car windows.

Cheshier identified two of the assailants at the scene, David and Thahn Nguyen, who were later convicted. Cheshier testified that he had earlier mistakenly identified another person as one of the assailants because he was wearing clothing similar to Le. Cheshier identified Le when the police later brought him to the 38th Street Tavern. Cheshier could not remember the name of the officer that brought Le to the tavern for identification, and none of the officers that testified remembers being the one who brought Le to Cheshier.

Calvert then testified. He testified that he suffered from a number of physical ailments, including short- and long-term memory loss, hearing loss, and deteriorating eyesight. He testified that he had mistakenly called out "Hey, Hoser," his nickname for Cheshier, when he got out of his car across the street from the tavern. II RP at 92. An Asian man approached and swung at Calvert several times, but Calvert blocked one of the punches and hit the man in the face to let him know that he would not tolerate this behavior. Calvert did not think that Le was the person he punched. Calvert then experienced a blow to the back of the head and began to lose consciousness. He testified that he tried to make his way across the street and was struck by two vehicles.

Cheryl Jennings testified she witnessed the assault from neighboring Frisbee's Bakery. The police took Jennings into a nearby restaurant and bar, where she recognized Le, but was

REPORT AND RECOMMENDATION
Page - 2

frightened because 30 to 40 patrons in the establishment "were all glaring" at her. III RP at 166. She did not identify Le for the police because she was afraid. Jennings quit her job at Frisbee's that day. At trial, Jennings identified Le as being involved in the assault, she testified that Le had been kicking Calvert while he was down, but she did not witness the attack on Calvert's car.

Officer Dan Morris also testified. He had a strained recollection on the events and relied primarily on his incident report. Morris testified that two suspects, David and Thanh Nguyen, were identified at the scene, and that David's lip was bloodied as if it had been punched. Morris testified that Thuy "Mary" Nguyen described one of the assailants as "an Asian male of about 18 years of age, about 5'4", slight build, with slicked-back black hair,: named "Vy or Vee." II RP at 125. Morris said that one other individual was identified at the scene, but that members of the community said he was not involved in the assault. According to Morris, these community members refused to give their names in fear of retaliation.

Dr. Robert Livingston testified regarding Calvert's injuries, confirming that Calvert had suffered a three-point, or tripod, fracture of the cheek. He could not confirm the cause of the injury.

Hank Baarslag, a forensic specialist employed with the Tacoma Police Department for 22 years, testified that he recovered pieces of a two-by-four from the parking lot near Calvert's car. After examining the pieces, Baarslag found two of Le's fingerprints on the wood.

Finally, Le testified. He said that, although he was at the scene, he was not involved in the assault or smashing Calvert's car windows. He said he heard a commotion and went outside to find "four Asian males . . . having contact: with Calvert. IV RP at 234. Le knew David and Thanh Nguyen, but he testified that they were not friends of his and that they did not hang out together.

Le said he observed only one of the individuals hit Calvert's car with a piece of wood, which broke into pieces, and a rock. He said he picked up the piece of the two-by-four out of curiosity; he was surprised that the wood, not the window glass, would shatter. Le denied being in the pool hall when the police brought Jennings in for identification.

During closing, the prosecutor, said; "Again, both Cheryl Jennings, who was obviously not comfortable being here, not comfortable identifying the defendant, was afraid, as many people were afraid in this case, people didn't want to come forward." VRP at 283-84. Defense counsel objected to this statement.

The jury convicted Le on all counts, and found in a special verdict that he was armed with a deadly weapon – the two-by-four – when committing the assault. The court sentenced Le to 184 months on Count I, six months on Count II, and 12 months on Count III, with a 24-month deadly weapon enhancement, all to run concurrently. This timely appeal follows.

Exhibit 5, Unpublished Opinion, *State v. Le, Washington* Court of Appeals Cause No. 29702-7-II, at 1-5, attached to Respondent' Submission of State Court Record.

In his petition for writ of habeas corpus filed with this court on March 31, 2005, petitioner raises the following five issues challenging his Kitsap County convictions:

1. Ineffective Assistance of Trial Counsel. Petitioner argues his trial Counsel failed to: (a) object to improper hearsay identifications; challenge a juror; and (b) object to testimony which lacked a foundation.

REPORT AND RECOMMENDATION
Page - 3

     2. Prosecutorial Misconduct.  Petitioner argues the State Prosecutor, in opening and closing arguments suggested that there were other witnesses who could identify petitioner as the assailant, but that such witnesses were afraid to come forward to testify.

     3. Improper In-Court-Identifications.  Petitioner argues at trial, Cheryl Jennings, and Mr. Cheshier identified petitioner as the assailant who attacked the victim, Mr. Calvert; however, both Jennings and Cheshier made the identifications 3 years later in court, and failed to identify petitioner at the time of the crime.

     4. Insufficient Evidence.  Petitioner argues at trial, the victim, Mr. Calvert testified that he did not believe petitioner was the man he punched or the man who assaulted him.  Although, Mr. Cheshier identified petitioner as the one who punched Mr. Calvert in the back of the head.  Cheryl Jennings could not identify petitioner at time of crime, and both Jennings and Officer Morris testified that David Nguyen and his brother Thanh Nguyen were the assailants.

Respondent acknowledges that each of these claims have been properly exhausted.  After carefully reviewing the petition for writ of habeas corpus, the answer to the petition, and the relevant state court record filed by respondent, this court recommends that the Court deny the petition for writ of habeas corpus.  Each of the issues raised in the petition are discussed below.

## EVIDENTIARY HEARING NOT REQUIRED

In its Order Directing Service and Response, the court directed respondent to state whether or not an evidentiary hearing was necessary.  The function of an evidentiary hearing is to try issues of fact; such a hearing is unnecessary when only issues of law are raised.  See, e.g., Yeaman v. United States, 326 F.2d 293 (9th Cir. 1963). The undersigned judge concludes that there are no relevant factual disputes to resolve in order for the Court to render its decision in this case.  Accordingly, an evidentiary hearing was not conducted.

## DISCUSSION

Federal courts may intervene in the state judicial process only to correct wrongs of a constitutional dimension.  Engle v. Isaac, 456 U.S. 107 (1983).  Section 2254 explicitly states that a federal court may entertain an application for writ of habeas corpus "only on the ground that [the petitioner] is in custody in violation of the constitution or law or treaties of the United States." 28 U.S.C. § 2254(a)(1995).  The Supreme court has stated many times that federal habeas corpus relief does not lie for mere errors of state law.  Lewis v. Jeffers, 497 U.S. 764 (1990); Pulley v. Harris, 465 U.S. 37, 41 (1984); Estelle v. McGuire, 502 U.S. 62 (1991).

A habeas corpus petition shall not be granted with respect to any claim adjudicated on the merits in the state courts unless the adjudication either  (1) resulted in a decision that was contrary to, or involved an

1  unreasonable application of, clearly established federal law, as determined by the Supreme Court; or (2)
2  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence
3  presented to the state courts.  28 U.S.C. §2254(d).  Further, a determination of a factual issue by a state
4  court shall be presumed correct, and the applicant has the burden of rebutting the presumption of
5  correctness by clear and convincing evidence.  28 U.S.C. §2254(e)(1).

6  Before granting relief, the district court must first determine whether the state court decision was
7  erroneous. Van Tran v. Lindsey, 212 F.3d 1143, 1155 (9th Cir. 2000), *cert. denied*, 121 5. Ct. 340 (2000).
8  The district court must then determine whether the state court decision involved an unreasonable
9  application of clearly established federal law. Id.  The district court may grant habeas relief only if it finds
10 the state court decision was unreasonable.  Van Tran, 212 F.3d at 1153; Weighall v. Middle, 215 F.3d
11 1058, 1063 (9th Cir. 2000).

12 *(i) INEFFECTIVE ASSISTANCE OF COUNSEL (Claim One)*

13 Ineffective assistance of counsel claims require a showing that (1) counsel's performance was
14 constitutionally deficient, and (2) but for this deficiency, there is a reasonable probability that the outcome
15 would have been different. Strickland v. Washington, 466 U.S. 668, 687 (1984).  Considering the first
16 prong, petitioner must rebut "a strong presumption that counsel's conduct falls within the wide range of
17 reasonable professional assistance," and that counsel's performance was "sound trial strategy." Id. at 689.
18 The Court must attempt to "eliminate the distorting effects of hindsight, to reconstruct the circumstances
19 of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Id.
20 To meet the second Strickland requirement of prejudice, "defendant must show that there is a reasonable
21 probability that, but for counsel's unprofessional errors, the result of the proceeding would have been
22 different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.
23 at 694.

24 In his petition Mr. Le states, "Trial counsel failed to object to improper hearsay identifications;
25 challenge a juror; failed to object to testimony which lacked a foundation.  Also see attached Memorandum
26 of Facts and Authorities." Petition at 5.  Regarding his trial counsel's performance, Mr. Le's
27 Memorandum states:

28 Prior to trial, defense counsel filed seven motions in limine, six of which were
granted by the court.  (CP 32-34; RP 26.)  Defense counsel did not, however, seek to exclude hearsay

REPORT AND RECOMMENDATION
Page - 5

identifications by non-testifying witnesses as to the identity of the individuals who assaulted Mr. Calvert or damaged his car. See (CP 32-34.) Nor did defense counsel seek to exclude reference to such hearsay identifications by the prosecuting attorney in opening statement or closing argument. See (CP 32-34.)

      During jury voir dire, defense counsel failed to inquire of a juror whose wife and children were murdered. (RP 41.) After the jury selection was complete, one of the jurors mentioned to the judicial assistant this his wife and children were murdered. When the trial court judge called this to the attention of both counsel, defense counsel sought to have a further opportunity to examine this juror to determine whether such juror should be excused "for cause." (RP 42.) The trial court denied defense counsel's request. (RP 45.)

      During opening statement, the prosecuting attorney stated that there is another witness in the 38th Street Tavern who will not testify. (RP51.) Defense counsel failed to object to this statement. During direct examination of officer Morris, defense counsel failed to object to the hearsay statements of Thuy Nguyen regarding the physical description of one of the suspects and regarding the suspect's name as Vy or Vee. (RP125).

With the exception of a long list of cites to various cases to support his claim for ineffective assistance of counsel, this is the full extent of Mr. Le's ineffective assistance of counsel argument and claim. Significantly, petitioner fails to address the second prong of the *Strickland* standard, which requires him to show that but for the alleged deficiencies, there is a reasonable probability that the outcome would have been different.

When the state court addressed this issue, they similarly found the claim to lack any merit. With respect to the claim that petitioner's counsel failed to challenge a juror who informed the court that his wife and daughters had been murdered, the state court opined:

> We find that Le cannot satisfy the two-prong test for ineffective assistance of counsel on any of his [ineffective assistance] claims.

B. Juror 29

> Le argues that trial counsel's failure to challenge juror 29, because his wife and daughters had been murdered 17 years earlier in North Carolina, prejudiced his case. Assuming, without deciding, that this failure to challenge juror 29 fell below an objectively standard of reasonableness, Le cannot show that the failure to challenge the juror prejudiced his case. Trial counsel did question the jurors, albeit collectively, to confirm that they would be impartial, asking them under oath: (1) whether any of the jurors would not be able to fairly try the case because of their own past experiences with violent acts; and (2) whether the jurors would limit themselves to evaluating the facts of the case, not letting sympathy or emotion override their judgment. Juror 29 did not respond to either question with an answer indicating bias or lack of impartiality.
>
> This case is similar to *State v. Alires*, 92 Wn. App. 931, 966 P.2d 935 (1998), in which Division Three found no ineffective assistance of counsel for failure to challenge impaneled jurors' bias against Hispanics. During voir dire, defense counsel for a Hispanic defendant asked the potential juror if any of them believed Hispanics were more likely to commit crime in their area than other people. *Alires*, 92 Wn. App. at 936. Counsel then asked those jurors collectively whether they would be unable to base their decision solely on the evidence rather than any preconceived notions about Hispanics, and none raised there hand.

REPORT AND RECOMMENDATION
Page - 6

> *Alires*, 92 Wn. App. at 934, 938. Counsel inquired no further about these jurors' beliefs about Hispanics. The court held that the jurors did not exhibit the "clear prejudice" necessary to show they could not have decided the case impartially. *Alires*, 92 Wn. App. at 938-39. The court stated that these jurors "can be characterized as jurors with preconceived ideas who need not be disqualified if they can put these notions aside and decide the case on the basis of the evidence given at trial." *Alires* 92 Wn. App. at 939.
>
> In the present case, juror 29 did not say that he had any bias towards a person charged with a violent crime, only that he had experience with violent acts. This does not rise to the level of "clear prejudice" necessary to show ineffective assistance of counsel for failure to challenge. And in spite of juror 29's disclosure regarding the loss of his wife and daughter, trial counsel sufficiently confirmed that juror 29 could fairly evaluate the evidence. Accordingly, Le fails to show that his trial counsel's failure to individually question juror 29 affected the outcome of the trial and thus cannot show prejudice.

Exhibit 5, at 6-8 (footnote omitted). With respect to petitioner's claim that counsel failed to properly exclude hearsay, the state court wrote:

> The State introduced through Morris that statements of Thuy "Mary" Nguyen, which described one of the suspects and identified him as "Vy or Vee." II RP at 125. Le testified at trial that he had legally changed his name to "Lavie Joseph Le" in 1998, and that prior to that, he had been known as "Lavie." IV RP at 231. Because the defense's theory was misidentification, failure to file a motion in limine to exclude the hearsay testimony that identified the assailant by a different name than Le's could certainly be considered a trial tactic, which cannot form the basis for an ineffective assistance of counsel claim.
>
> We also reject Le's argument that trial counsel's failure to move to exclude all other evidence and arguments related to hearsay testimony regarding the identification of Calvert's assailants prejudiced him. Even if counsel should have moved to exclude these statements, this oversight was harmless. First, Morris made only a single, isolated reference to members of the community who were afraid to come forward in fear of retaliation. And these community members had made statements about only the misidentified suspect, not Le. Further, Le does not dispute that another individual was misidentified as a suspect; he actually focuses heavily on this fact to cast doubt on Cheshier's credibility. Thus, Le cannot show that the testimony prejudiced the outcome of his trial.
>
> Finally, counsel's failure to exclude any reference to these statements in argument was similarly harmless. While counsel did not file a motion in limine to limit prosecutor's statements, she immediately objected to the prosecutor's comment in closing arguments that there were many people in this case who had identification information and were afraid to come forward. The judge promptly informed counsel that he would instruct the jury to consider only the evidence and not the prosecutor's arguments. Thus, any potential effects of the failure to move in limine to exclude Morris' or the prosecutor's statements were harmless, and Le cannot satisfy the prejudice prong on this claim.

Exhibit 5, at 8-10.

After reviewing the record, petitioner's claims of ineffective assistance of counsel must fail. The court finds that the state court properly addressed the merits of those claims, which did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court; nor did it result in a decision that was based on an unreasonable

determination of the facts in light of the evidence presented to the state courts.

*(ii) PROSECUTORIAL MISCONDUCT (Claim Two)*

Federal habeas review of prosecutorial misconduct is limited to the narrow issue of whether the conduct violated due process. *See* Thomas v. Borg, 74 F.3d 1571, 1576 (9th Cir.), *cert. denied*, 117 S.Ct. 227 (1996). Prosecutorial misconduct violates due process when it has a substantial and injurious effect or influence in determining the jury's verdict. *See* Ortiz- Sandoval v. Gomez, 81 F.3d 891, 899 (9th Cir.1996). It is permissible for a prosecutor to argue inferences based on evidence introduced at trial. *See* Duckett v. Godinez, 67 F.3d 734, 742 (9th Cir.1995), *cert. denied*, 116 S.Ct. 1549 (1996). Moreover, where the trial court gives the jury a curative instruction, it is presumed that the jury will follow that instruction. *See* Greer v. Miller, 483 U.S. 756, 766 n. 8 (1987); *see also* Burks v. Borg, 27 F.3d 1424, 1431 (9th Cir.1994).

Here, petitioner claims, "The State Prosecutor, in opening and closing arguments suggested that there were other witnesses who could identify petitioner (VY LA LE) as the assailant, but that such witnesses were afraid to come forward to testify."

The Washington Court of Appeals adjudicated Mr. Le's prosecutorial misconduct claim on the merits when it held as follows:

> Le claims that the prosecutor committed reversible misconduct in his opening and closing statements by commenting that there were other witnesses who could identify Le as the assailant but would not testify. Finding no misconduct, we reject Le's claim.
>
> In his opening, the prosecutor stated: "Another gentleman, who will not testify, is not around, was also there." II RP at 51. In closing, he stated: "Again, both Cheryl Jennings, who was obviously not comfortable being here, not comfortable identifying the defendant, was afraid, as many people were afraid in this case, people that didn't want to come forward." VRP at 283-84.
>
> "Where improper argument is charged, the defense bears the burden of establishing the impropriety of the prosecuting attorney's comments as well as their prejudicial effect." *State v. Hoffman*, 116 Wn.2d 51 93, 804 P.2d 577 (1991) (citing *State v. Hughes*, 106 Wn.2d 176, 195, 721 P.2d 902 (1986)). "To establish prejudice, the defense must demonstrate there is a substantial likelihood the misconduct affected the jury's verdict." *State v. Brown*, 132 Wn.2d 529, 561, 940 P.2d 546 (1997). Le fails to show that the prosecutor's comments affected the outcome of the trial.
>
> First, the prosecutor did not say in his opening that there was someone who could identify Le as an assailant who would not testify at trial. He simply stated that there was someone else at the scene who was "not around" and would not testify. This is consistent with Cheshier's testimony at trial that another man, Carlos, was at the scene.
>
> Second, the prosecutor's comments, that Jennings was afraid and so were many people who

> did not want to come forward, could not have prejudiced the jury because these comments were also supported by the testimony offered at trial. Jennings testified that she was scared to identify Le the night of the assault, and that she quit her job that day out of fear after the incident. And in response to defense counsel's objection in closing, the prosecutor correctly pointed out that Morris had testified that there were people who confirmed that one of the suspects was misidentified but was afraid to come forward in fear of retaliation.
>
> Because the prosecutor's statements were supported by evidence adduced at trial, Le fails to show "a substantial likelihood the misconduct affected the jury's verdict," and his claim fails. *Brown*, 132 Wn.2d at 561.

Exhibit 5, at attachment "Unpublished Opinion", pp. 11-12.

Similar to the court's finding regarding petitioner's claim of ineffective assistance of counsel, the state court's adjudication regarding the claim of prosecutorial misconduct was not contrary to, or an unreasonable application of, clearly established federal law as determined by the United States Supreme Court. The Court should deny this claim on this basis.

*(ii) IMPROPER IN-COURT-IDENTIFICATIONS (Claim Three)*

Petitioner argues at trial Ms. Jennings and Mr. Cheshier both identified him as the assailant who attacked Mr. Calvert, but this identification was three years later, in court, and they failed to identify petitioner at the time of the crime.

"The reliability of properly admitted eyewitness identification, like the credibility of the other parts of the prosecution's case is a matter for the jury. But it is the teaching of *Wade*, *Gilbert*, and *Stovall, supra*, that in some cases the procedures leading to an eyewitness identification may be so defective as to make the identification constitutionally inadmissible as a matter of law." Foster v. California, 394 U.S. 440, 442 fn. 2 (1969).

Here, the court finds petitioner has not shown that the identification testimony in the case was improperly admitted to the jury for consideration. Several facts contradict petitioner's allegations. For instance, Mr. Cheshier positively identified Mr. Le as the first assailant that attacked Calvert and the one who later attacked Calvert with a two by four. Exhibit 10, at 55-89 (Cheshier's testimony). He further identified Mr. Le in court. *Id*. at 58, 59, and identified Mr. Le as Calvert's attacker who tried to get into the bar with a two by four, after he helped carry the victim inside the bar. *Id*. at 60. Mr. Cheshier stated he had very good recollection of the attack and insisted the passage of time did not impede his recollection of what happened. *Id* at 76.

Officer Morris was the police officer who took witnesses' statements at the scene of the crime. *Id*.

REPORT AND RECOMMENDATION
Page - 9

1  at 117-136 (Morris testimony). Officer Morris had little independent recollection as to what happened and
2  had to refer to his report, *id*. at 123, but he recalled that Cheshier identified the suspects, *id*. at 122.
3  According to Officer Morris' police report, Cheshire identified two other assailants, David and Thanh
4  Nguyen. *Id*. at 123. Officer Morris also confirmed that the police initially detained a third person, by the
5  name of Quang Viet Le (who gave his name as Vi) that was later released. *Id*. at 132. Officer Morris was
6  contacted by a woman named Thuy Nguyen who told him there was an individual involved in the assault
7  whose name was Vy or Vee. *Id*. at 125.

8        Ms. Jennings, who worked at the bakery near the tavern, testified she observed three men beating
9  another in front of the bakery. Exhibit 11 at 164.   She claimed one of the men was beating Calvert with
10 numchucks and she identified Mr. Le as the man. *Id*. at 165. When the police took her to the bar to see if
11 she recognized anybody there, Jennings was frightened and told the police she did not recognize anybody.
12 *Id*. However, she testified Mr. Le was one of the people who was in the bar, but she did not identify him
13 there because she was scared. *Id*. at 166. She quit her job the same day because she was scared. *Id*. at 167.

14       In sum, this court finds no merit in Mr. Le's claim that the identification evidence was improperly
15 admitted at trial.  In contrast, the state trial court properly allowed the juror to consider the weight of this
16 evidence.

17 *(iv) INSUFFICIENT EVIDENCE (Claim Four)*

18       The court examines the sufficiency of the evidence to support a conviction in the light most
19 favorable to the prosecution. <u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (1979); <u>United States v. Carpenter</u>,
20 95 F.3d 773, 775 (9th Cir.1996), *cert. denied*, 117 S.Ct. 1094 (1997).  The court must determine whether
21 "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."
22 <u>Jackson</u>, 443 U.S. at 319; <u>United States v. Orozco-Santillan</u>, 903 F.2d 1262, 1264 (9th Cir.1990).

23       In his petition, Mr. Le argues: "At trial, the victim, Mr. Calvert testified that he did not believe
24 petitioner (VY LA LE) was the man he punched or the man who assaulted him.  Although, Mr. Cheshier
25 identified petitioner as the one who punched Mr. Calvert (victim) in the back of the head, however, Cheryl
26 Jennings could not identify petitioner at time of crime and both Jennings Officer Morris testified that David
27 Nguyen and his brother Thanh Nguyen were the assailants."

28       As discussed above the issue of identification evidence was properly given to the jury to weigh and

REPORT AND RECOMMENDATION
Page - 10

consider. To the extent Mr. Le's claim of insufficient evidence relies on the issue of identification, the claim of insufficient evidence similarly lacks merit. Moreover, when the state court addressed this issue it did not result in a decision which would allow the court to grant the petition for writ of habeas corpus.

The state court opined:

> Le contends that the evidence was insufficient to prove that he assaulted Calvert, used the two-by-four to commit the assault, or that Calvert suffered great bodily injury. We disagree and find that sufficient evidence supports the verdict.
>
> The State carries the burden of proving every element of the crimes charged beyond a reasonable doubt. *State v. McCullum*, 98 Wn.2d 484, 489, 656 P.2d 1064 (1983). When reviewing a sufficiency of the evidence claim, the court applies a standard of review that is deferential to the jury verdict, drawing all reasonable inferences from the evidence in favor of the State and interpreting the evidence most strongly against the defendant. *State v. Joy*, 121 Wn.2d 333, 339, 851 P.2d 654 (1993). As the State argues, a claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom. Br. of Respondent at 18 (citing *State v. Barrington*, 52 Wn.App. 478, 484, 761 P.2d 632 (1988), review denied, 111 Wn.2d 1033 (1989)). We defer to the jury on the credibility of witnesses and the persuasiveness of the evidence. *State v. Bonisisio*, 92 Wn.App. 783, 794, 964 P.2d 1222 (1998), review denied, 137 Wn.2d 1024 (1999).
>
> As Le argues, there was conflicting testimony given in this case. But we defer to the jury on the credibility of witnesses and the persuasiveness of the evidence. Bonisisio, 92 Wn. App. at 794. Viewing the evidence in the light most favorable to the State, we conclude that the jury could have believed Cheshier's testimony that Le was involved in the assault, that he was armed with the two-by-four when he went to the tavern to find Calvert, and that Le participated in smashing Calvert's car windows. Cheshier's testimony is supported by Baarslag's testimony that he found two of Le's fingerprints on the splintered two-by-four. Similarly, the jury could have believed Jennings' eye witness testimony that Le was kicking Calvert during the assault.
>
> Conversely, the jury could have found Le's testimony that he was at the scene, but not involved, incredible. It could also have found similarly unbelievable his explanation that he only picked up the two-by-four to see why it was broken. And although Calvert was the victim, in the light of his testimony that he suffers short- and long-term memory loss, the jury could have believed Cheshier's version of events rather than Calvert's.
>
> We conclude that sufficient evidence supports the jury's guilty verdict on the first degree assault charge. We also conclude that there was sufficient evidence to support the deadly weapon enhancement. Cheshier's testimony that Le was armed with the two-by-four immediately after the assault is circumstantial evidence that Le had the two-by-four during the assault. And the court instructed the jury on an accomplice theory, informing them that they could find that Le was armed with the deadly weapon if they concluded that any of the assailants were armed with the Board. Based on the testimony at trial, the jury could have concluded beyond a reasonable doubt that Le or one of the other assailants was armed with the two-by-four during the assault.
>
> Finally, we find that there was sufficient evidence for the jury to decide that Calvert suffered great bodily harm. Livingston testified that Calvert's left cheekbone had been fractured. Calvert also testified about his injuries, stating that the suffers from lower back pain, nerve damage to his left shoulder, hearing loss, deterioration of his vision, and short- and long-term memory loss. This evidence sufficient for the jury to find that Calvert suffered great bodily harm.

> We also find that sufficient evidence supported Le's conviction of second degree malicious mischief. Cheshier testified that he witnessed Calvert's three assailants damage Calvert's car using a 25- to 30- pound concrete block, rocks a pipe, and two-by-fours. When Cheshier last saw Le, Le was "beating up" on Calvert's car with what Cheshier thought were a two-by-four and a rock. Considering Baarslag's corroborating testimony that Le's fingerprints were on the broken pieces of the two-by-four, we find that there was sufficient evidence to support the jury's guilty verdict on the second degree malicious mischief count.

Exhibit 5, at 12-15.

After reviewing the record, petitioner's claims of insufficient evidence must fail. The court finds that the state court properly addressed the merits of this claim, which did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court; nor did it result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented to the state courts.

## **CONCLUSION**

Based on the foregoing discussion, the Court should deny the petition for writ of habeas corpus. Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. *See also* Fed.R.Civ.P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140 (1985). Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on **February 3, 2006**, as noted in the caption.

DATED this 13th day of January, 2006.

/s/ *J. Kelley Arnold*
J. Kelley Arnold
United States Magistrate Judge