UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

VY LA LE,

    Petitioner,

    v.

HAROLD CLARK and ROBERT MCKENNA,

    Respondent.

Case No. 05-5238RJB

ORDER

This matter comes before the court on the Report and Recommendation of Magistrate Judge J. Kelley Arnold (Dkt. 16). The court has reviewed the Report and Recommendation, the petitioner's objections, and the file herein.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

Vy La Le is an inmate at High Desert State Prison. Mr. Le was convicted of first degree assault with a deadly weapon, second degree malicious mischief, and bail jumping in Pierce County Superior Court. Dkt. 1. He filed a writ of habeas corpus with this court pursuant to 28 U.S.C. § 2254 on the grounds of ineffective assistance of trial counsel, prosecutorial misconduct, improper in-court identifications, and insufficient evidence. Dkt. 1.

**II. DISCUSSION**

28 U.S.C. § 2254(d) provides as follows:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--

ORDER - 1

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The scope of this court's inquiry is therefore whether the Court of Appeals' decision affirming Mr. Le's conviction is contrary to or involves an unreasonable application of clearly established federal law. Under the "contrary to" clause, the court should grant a writ of habeas corpus if the state court arrived at a conclusion opposite to that reached by the Supreme Court on a question of law or reaches a different result from a Supreme Court case decided on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). Under the "unreasonable application" clause, the court may grant a writ of habeas corpus if the state court identifies the correct legal principle from the Supreme Court's decisions but unreasonably applies that principle to the petitioner's case. *Id.* at 365.

Not all errors warrant habeas relief, and "there may be some constitutional errors which in the setting of a particular case are so unimportant and insignificant that they may, consistent with the Federal Constitution, be deemed harmless, not requiring the automatic reversal of the conviction." *Chapman v. California*, 386 U.S. 18, 22 (1967). A habeas petitioner is entitled to relief only if the error "had substantial and injurious effect or influence in determining the jury's verdict," resulting in "actual prejudice." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).

**A. INEFFECTIVE ASSISTANCE OF COUNSEL**

Ineffective assistance of counsel claims must satisfy the two prongs announced in *Strickland v. Washington*, 466 U.S. 668, 687 (1984): First, the petitioner must demonstrate that his counsel made errors so egregious that counsel was not functioning as the "counsel" guaranteed to the petitioner by the Sixth Amendment. *Id.* This prong is analyzed under an objective standard of reasonableness, and the petitioner must overcome a strong presumption that the attorney's actions constitute sound trial strategy. *Id.* at 688-89. Among the duties an attorney owes to her clients are the duty of loyalty and to avoid conflicts of interest, the duty to advocate on the clients'

ORDER - 2

behalf, the duties to consult with clients and to keep them apprised of important developments in the case, and the duty to employ the skill and knowledge required to render the trial reliable. *Id.* This list is not exhaustive of an attorney's duties to her client, and claims for ineffective assistance of counsel must therefore be analyzed in context. *Id.*

Second, the petitioner must demonstrate that counsel's deficient performance prejudiced his defense. *Id.* at 687. To satisfy this prong, the petitioner must demonstrate that there is a reasonable probability that but for counsel's errors, the result of the proceeding would have been different. *Id.* at 694. The respondent contends that Mr. Le cannot satisfy this prong because he did not suffer prejudice. Dkt. 12 at 13.

**1. FAILURE TO QUESTION JUROR 29**

Mr. Le first alleges that defense counsel's failure to inquire of Juror 29 constitutes ineffective assistance of counsel. Dkt. 2 at 14. In response to a question about whether he had any personal experience with similar or related cases or incidents, Juror 29 answered that his wife and two daughters had been murdered seventeen years ago. Dkt. 13, Exh. 8 at 13. The Sixth Amendment guarantees criminal defendants a verdict by impartial jurors, and the bias or prejudice of a single juror would violate this right. *See, e.g., Irvin v. Dowd*, 366 U.S. 717, 721 (1961). Voir dire enables the parties to probe potential jurors for prejudice and is an important mechanism for protecting this right.

The Court of Appeals held that Mr. Le could not establish that he was prejudiced by defense counsel's failure to question Juror 29 about the murder of his wife and children. Dkt. 13, Exh. 5 at 7. The Court of Appeals based this holding upon the fact that Juror 29 did not indicate any bias or partiality when the pool of potential jurors was asked whether their past experiences with violent acts would render them unable to be fair and whether they could limit themselves to evaluating the facts of the case without letting their sympathies and emotions override their judgment. Dkt. 13, Exh. 5 at 7, Exh. 8 at 20, 36, 65.

Based upon these facts, the court cannot conclude that the decision of the Court of Appeals involves an unreasonable application of federal law or is contrary to the decisions of the Supreme Court. While Mr. Le may contest the wisdom of defense counsel's acceptance of the jury

ORDER - 3

panel when she still had one peremptory challenge with which she could have discharged Juror 29, there is no evidence that Juror 29's past experiences with violent crime rendered him biased in any way. When asked about his past experiences with violent crime, his relationships with people working for the court system and law enforcement, and his military experience, Juror 29 was forthcoming and gave complete responses. Dkt. 13, Exh. 8 at 13, 19, 78. Juror 29's responsiveness to other questions therefore provides no basis for questioning his silence in response to questions about whether he would be unable to render a fair and impartial decision.

### 2. FAILURE TO OBJECT TO HEARSAY IDENTIFICATION TESTIMONY

Mr. Le contends that defense counsel's failure to file a motion in limine to exclude "hearsay identifications by non-testifying witnesses as to the identity of the individuals who assaulted Mr. Calvert or damaged his car" and "references to such hearsay identifications by the prosecuting attorney in opening statement or closing argument." Dkt. 2 at 13-14.

At the heart of this contention is the evidence identifying Mr. Le and evidence incorrectly identifying Quang Viet Le as participants in the assault. Officer Morris, relying heavily on his police report, testified that Thuy Nguyen told him that there was another subject at the scene of the crime by the name of "Vy or Vee." Dkt. 13, Exh. 10 at 125. Officer Morris testified that he was unsure of the pronunciation of this name. *Id.*

On cross examination, Mr. Morris testified that Mr. Cheshier had identified the wrong person as an assailant and that this person was ruled out as a suspect by "members of the community." *Id.* at 132. On redirect, Officer Morris testified that the name of the person initially deemed a suspect but later determined not to be involved in the case was "Vi." *Id.* at 132.

The prosecutor then asked who had told Officer Morris about "Vi Le," and the witness answered that an Asian female (presumably Thuy Nguyen) had given him that name. Defense counsel objected on the grounds that Officer Morris had testified about the name "Vy or Vee" but not about "Vi Le." *Id.* at 134. Outside the presence of the jury, the objection was overruled on the grounds that the question had been asked without objection. *Id.* at 135. In the presence of the jury, the prosecutor asked Officer Morris to clarify the name given to him by Thuy Nguyen, and Officer

ORDER - 4

1 Morris responded, "Vi or Vee, V-i." *Id.*

2     The Court of Appeals held that the failure to exclude the statements of Thuy Nguyen
3 "could certainly be considered a trial tactic." Dkt. 13, Exh. 5 at 9. This decision was based upon
4 defense counsel's use of the confusion over the names "Vi" and "Vy" in an attempt to create doubt
5 in the minds of the jury. *See* Dkt. 295. While Thuy Nguyen's statement linking Mr. Le to the crime
6 had the potential to negatively impact his defense, it also bolstered the theory that Mr. Le had been
7 wrongly identified. On habeas review, the role of the court is not to second guess this sort of
8 tactical decision. Analyzed in context, this court cannot conclude that the decision not to move to
9 exclude the hearsay statements of Thuy Nguyen was objectively unreasonable.

### 3. FAILURE TO OBJECT TO PROSECUTION'S OPENING STATEMENT

11     Mr. Le contends that defense counsel erroneously failed to object to the portion of the
12 prosecution's opening statement and closing argument referring to "another witness in the 38th
13 Street Tavern who will not testify." Dkt. 2 at 14. The Court of Appeals held defense counsel's
14 failure to move to exclude the prosecutor's statements suggesting that there were other witnesses
15 who would not be testifying constituted harmless error. Dkt. 13, Exh. 5 at 9. The Court of Appeals
16 held that the prosecutor's statement was consistent with Mr. Cheshier's testimony that a man by
17 the name of Carlos was at the scene. *Id.* at 12. The court also emphasized that the prosecutor
18 merely stated that there was another witness at the scene and not that this other witness could
19 identify Mr. Le. *Id.* at 11. This holding is not contrary to and does not involve an unreasonable
20 application of federal law.

### 4. FAILURE TO OBJECT TO EVIDENCE LACKING FOUNDATION

22     The final ground upon which Mr. Le bases his ineffective assistance of counsel claim is that
23 defense counsel "failed to object to testimony which lacked a foundation." Dkt. 1 at 4. Mr. Le's
24 Memorandum of Facts and Supporting Authorities fails to explain this argument, but it was briefed
25 before the Court of Appeals. *See* Dkt. 2 at 13-15, Dkt. 13, Exh. 2-3. Mr. Le's argument concerns
26 the testimony of Cheryl Jennings, who testified that she witnessed the assault from a nearby
27 bakery. Dkt. 13, Exh. 5 at 4. The police took Ms. Jennings to a restaurant and bar where she
28 recognized Mr. Le but was too afraid to identify him because 30 to 40 restaurant patrons were

ORDER - 5

1  glaring at her. *Id.* At trial, Ms. Jennings testified that Mr. Le was involved in the assault and that
2  she had seen him kicking Mr. Calvert while he was on the ground. *Id.*
3        The Court of Appeals held that the decision not to object to Ms. Jennings's testimony on
4  the grounds that it lacked foundation was probably a tactical decision based upon the unlikeliness
5  that such an objection would be successful. *Id.* at 10. The court noted that Ms. Jennings's
6  testimony was based upon her personal knowledge because she was present at the scene and saw
7  the assault. *Id.* The Court of Appeals also held that the decision not to "vigorously" cross-examine
8  Ms. Jennings about her inability to identify Mr. Le before trial could have been a strategic choice
9  to avoid giving Ms. Jennings the opportunity to testify that she feared retaliation from Mr. Le. *Id.*
10 The petitioner has failed to convince the court that these holdings conflict with Supreme Court
11 jurisprudence.

      **B. PROSECUTORIAL MISCONDUCT**

13       Mr. Le contends that the prosecutor engaged in prosecutorial misconduct by suggesting to
14 the jury that there were other witnesses who could have identified the petitioner but were too
15 afraid to come forward. Dkt. 1 at 4. In closing, the prosecutor said, "Again, both Cheryl Jennings,
16 who was obviously not comfortable being here, not comfortable identifying the defendant was
17 afraid, and many people were afraid in this case, people that didn't want to come forward." Dkt.
18 13, Exh. 5 at 5. Defense counsel immediately objected to this statement, and the judge responded
19 with the following instruction: "I'm going to tell the jury that one of the jury instructions tells you
20 that what the attorneys say is not evidence. You're to go with your recollection of what came from
21 the witness stand . That applies to remarks of both attorneys. Continue." Dkt. 13, Exh. 14 at 284.
22       That a prosecutor's remarks constitute "[i]mproper argument does not, per se, violate a
23 defendant's constitutional rights." *Jeffries v. Blodgett*, 5 F.3d 1180, 1191 (9th Cir.1993).
24 Prosecutorial misconduct constitutes a constitutional violation only when the misconduct "so
25 infected the trial with unfairness as to make the resulting conviction a denial of due process."
26 *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). To determine whether prosecutorial misconduct
27 occurred, the court considers the remark in context with the entire proceedings. *Greer v. Miller*,
28 483 U.S. 756, 766 (1987). Objections to and curative instructions to the remark are relevant to this

ORDER - 6

inquiry. *See id.* Absent "overwhelming probability" that the jury will be unable to comply, the court presumes that the jury will follow a curative instruction. *Id.* at 767 n.8.

The Court of Appeals held that Mr. Le "fail[ed] to show that the prosecutor's comments affected the trial" because the prosecutor's comment was supported by evidence adduced at trial. Dkt. 13, Exh. 5 at 12. Specifically, Ms. Jennings testified that she quit her job at the bakery because she was afraid, and Officer Morris testified that the people who confirmed that Quang Viet Le was misidentified were afraid to come forward in fear of retaliation. Dkt. 13, Exh. 5 at 12. The Court of Appeals's holding that the prosecutor's remark was supported by the evidence, does not violate federal law as defined by the Supreme Court, especially considering the immediate objection to the remark and the court's curative instruction.

**C. IMPROPER IN-COURT IDENTIFICATION**

Mr. Le contends that two witnesses, Mr. Cheshier and Ms. Jennings, should not have been permitted to offer in-court identifications of the petitioner because they did not identify the petitioner at the time of the crime three years earlier. Dkt. 1 at 5.

To determine whether an eyewitness' in-court identification is admissible, the court must consider "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." *Neil v. Biggers*, 409 U.S. 188, 199-200 (1972); *U.S. v. Carbajal*, 956 F.2d 924, 929 (9th Cir. 1992) (applying factors to in-court identifications). That an in-court identification occurs years after the observation does not necessarily render the identification unreliable. *See U.S. v. Matta-Ballesteros*, 71 F.3d 754, 770 (9th Cir. 1995 (six year gap between observation and in-court identification does not undermine reliability of identification where other indicia of reliability are present).

The Court of Appeals rejected Mr. Le's argument, holding that Mr. Le raised arguments going to the weight, rather than the admissibility, of the testimony. Dkt. 13, Exh. 5 at 15. The petitioner has offered no authority for the notion that a witness may not be permitted to identify a defendant for the first time at trial. *But see U.S. v. Domina*; 784 F.2d 1361, (9th Cir. 1986) (Where

ORDER - 7

1  initial identification is in court, identification is suggestive but jury is able to evaluate witness'
2  credibility during identification); *Van Pilon v. Reed*, 799 F.2d 1332, 1339 (9th Cir. 1986) (witness
3  who did not identify defendant in lineup permitted to identify him in court). Affirming the trial
4  court's decision to allow the witnesses to identify the petitioner for the first time in court was
5  therefore not contrary to or an unreasonable application of federal law.

**D. INSUFFICIENT EVIDENCE**

Mr. Le contends that there was insufficient evidence to convict him because the victim testified that he did not think the petitioner was the person who had assaulted him, because Ms. Jennings was unable to identify petitioner at the time of the crime, and because Ms. Jennings and Officer Morris testified that David and Thanh Nguyen were the assailants. Dkt. 1 at 5.

The Court of Appeals rejected Mr. Le's argument that the prosecution's evidence was insufficient to convict him. Dkt. 13, Exh. 5 at 13. The Court of Appeals held that the jury could have been persuaded by Mr. Cheshier's testimony that Mr. Le was involved in the assault, armed with a two-by-four, and participated in smashing Mr. Calvert's car windows; by Ms. Jennings's testimony that Mr. Le participated in the assault, and Mr. Baarslag's testimony that he found Mr. Le's fingerprints on the two-by-four. *Id.* As the Court of Appeals acknowledged, the record in this case is replete with inconsistent testimony. For example, Mr. Cheshier's testimony about the timing of the incident and about the frequency with which Mr. Calvert visited the bar where the incident occurred was contradicted by the testimony of other witnesses. *See id.* at 77 (timing), 118 (timing), 72 (frequency), 101 (frequency). The Court of Appeals' holding that such inconsistencies were within the province of the jury is not contrary to federal law.

ORDER - 8

### III. ORDER

Therefore, it is now

**ORDERED** that the conclusion of the Report and Recommendation (Dkt. 16) is **ADOPTED** for the foregoing reasons, and the petition for a writ of habeas corpus is **DENIED**.

The Clerk of the Court is instructed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

DATED this 22nd day of February, 2006.

*Robert J. Bryan*
Robert J. Bryan
United States District Judge